UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ROSS FONG,<br><br>          Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No. CV 14-6351 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND FOR PARTIAL PAYMENT OF BENEFITS AND FOR FURTHER PROCEEDINGS |

**I.    SUMMARY**

On August 15, 2014, plaintiff Steven Ross Fong ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 19, 2014 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, and as explained below, the decision of the Commissioner is REVERSED AND REMANDED for (1) partial payment of benefits; and (2) further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On February 1, 2010, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 11). Plaintiff asserted that he became disabled on November 1, 2009 ("onset date"), due to bipolar depression, OCD, and major anxiety disorder. (AR 264-66). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on August 22, 2011. (AR 487-518). On September 7, 2011, the ALJ determined that plaintiff was not disabled through the date of the decision ("First Decision"). (AR 88-96).

On July 9, 2013, the Appeals Council granted review, vacated the First Decision, and remanded the case essentially directing the ALJ, among other things, to give further consideration to the opinions provided by Dr. Daniel Asimus, one of plaintiff's treating physicians, and to in turn reassess plaintiff's residual functional capacity and obtain supplemental evidence from a vocational expert as needed. (AR 102-03).

On March 19, 2014, the ALJ again examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 487-518).

On April 14, 2014, the ALJ determined that plaintiff was not disabled from the alleged onset date through the date of the decision ("Second Decision"). (AR 11-21). Specifically, the ALJ found: (1) plaintiff suffered from the severe impairment of bipolar disorder (AR 13); (2) plaintiff's impairments, considered

singly or in combination, did not meet or medically equal a listed impairment (AR 14); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with additional nonexertional limitations[1] (AR 14); (4) plaintiff could not perform any past relevant work (AR 19); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically laundry worker, and kitchen helper (AR 20-21); and (6) plaintiff's allegations regarding his limitations were not entirely credible (AR 15).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

///

---

[1] The ALJ determined that plaintiff: (1) could only do work involving simple repetitive tasks; and (2) could not perform work involving public contact or more than occasional contact with coworkers. (AR 14).

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

1. (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.  DISCUSSION

### A.  The ALJ Materially Erred in Evaluating the Medical Opinion Evidence

Plaintiff contends that the ALJ improperly rejected certain medical opinions provided by Dr. Asimus. (Plaintiff's Motion at 2-14).  The Court agrees.  As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

#### 1.  Additional Pertinent Background

Dr. Asimus treated plaintiff from September 2010 to March 2011. (AR 431-36).  On March 13, 2011, Dr. Asimus completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" ("March 2011 Statement"). (AR 426-48).  In the March 2011 Statement Dr. Asimus opined, in pertinent part, that plaintiff had marked restriction in his ability "to make judgments on simple work-related decisions" and marked restriction in his ability to "respond appropriately to

///
///
///

work pressures in a routine work setting" ("Dr. Asimus' Opinions").[2] (AR 426-27).

In the First Decision, the ALJ described in detail all of the limitations Dr. Asimus identified in the March 2011 Statement, and then summarily concluded that "[c]onsistent with the opinion of Dr. Asimus and the claimant's level of functioning while he was in school, the undersigned finds the claimant should have no difficulty performing simple repetitive tasks in a work setting with no public contact and occasional contact with coworkers." (AR 94). The ALJ did not explain the weight, if any, he attributed to the opinions expressed in the March 2011 Statement. (AR 94).

On July 9, 2013, the Appeals Council granted review, vacated the First Decision, and remanded the case directing the ALJ to address the following issue:

> The hearing decision does not contain an adequate evaluation of the treating source opinion at Exhibit 9F at pages 3-5 from Dr. Asimus. The hearing decision at page 7 summarizes Dr. Asimus' opinion regarding marked limitations in making judgments on simple work-related decisions and responding appropriately to work pressures, but does not indicate the weight accorded or explain why these limitations were not adopted.

(AR 102).

On remand the ALJ again detailed in the Second Decision all of Dr. Asimus' findings in the March 2011 Statement, including Dr. Asimus' Opinions regarding the two categories of marked restrictions in plaintiff's mental

---

[2] In the March 2011 Statement, Dr. Asimus also opined that plaintiff had (1) slight restrictions in his abilities to (a) understand and remember short, simple instructions, (b) carry out short, simple instructions, (c) interact appropriately with the public, (d) interact appropriately with co-workers, and (e) respond appropriately to changes in a routine work setting; and (2) moderate restrictions in his abilities to (a) understand, remember, and carry out detailed instructions, (b) and interact appropriately with supervisors. (AR 426-27).

6

functioning – *i.e.*, abilities to make "simple work-related decisions" and to "respond appropriately to work pressures." (AR 17-18). In evaluating the March 2011 Statement generally, the ALJ noted "concern" regarding the accuracy of the findings therein as they applied to plaintiff's "current condition" since Dr. Asimus' findings were made "more than three years ago." (AR 18). Nonetheless, the ALJ still concluded that Dr. Asimus' findings were generally entitled to "significant probative weight." (AR 17-18). The ALJ explained:

> [T]he undersigned finds that Dr. Asimus' assessment of [plaintiff's] ability to interact appropriately with coworkers, supervisors, and the public, respond appropriately to changes in a routine work setting, and understand, remember, and carry out short, simple instructions are deserving of significant probative weight because they are supported by the objective medical evidence which shows a history complaints of anxious, depressive, and hypomaniac symptoms, but otherwise mostly normal cognitive, expressive, intellectual, and receptive functioning, as well as improvement in [plaintiff's] condition with treatment. Dr. Asimus maintained a lengthy treating relationship with [plaintiff]. This longitudinal prospective [plaintiff's] condition lends Dr. Asimus' opinion [sic] additional probative weight.

(AR 18). However, the ALJ gave "little probative weight" to Dr. Asimus' Opinions "regarding [plaintiff's] marked limitations" reasoning that such limitations "[are] not supported by the record, which, as discussed above, reveals that [plaintiff's] allegedly disabling symptoms did not prevent him from performing work-related activities in an aquarium store and completing a university degree." (AR 18).

///
///

### 2. Pertinent Law

In Social Security cases, courts give varying degrees of deference to medical opinions depending on the type of physician who provided them, namely "treating physicians," "examining physicians," and "nonexamining physicians." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotation marks omitted). An examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. See id. (citation omitted).

A treating physician's opinion is not necessarily conclusive, however, as to a claimant's medical condition or disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject a treating physician's uncontroverted opinion by providing "clear and convincing reasons supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Where a treating physician's opinion conflicts with another doctor's opinion, an ALJ may reject the treating opinion "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (quoting Reddick, 157 F.3d at 725) (quotation marks omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (same) (citations omitted); see also Magallanes, 881 F.2d at 751, 755 (ALJ need not recite "magic

8

words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). An ALJ "must do more than offer [] conclusions." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating physician's opinion insufficient) (citation omitted). "[The ALJ] must set forth his [or her] own interpretations and explain why they, rather than the [physician's], are correct." Embrey, 849 F.2d at 421-22.

### 3. Analysis

Here, substantial evidence did not support the two reasons the ALJ gave for rejecting Dr. Asimus' Opinions. First, the ALJ stated that Dr. Asimus' Opinions regarding plaintiff's disabling psychological symptoms were inconsistent with plaintiff's testimony that he could do "work-related activities in an aquarium store." (AR 18). An ALJ may reject a medical opinion that is inconsistent with a claimant's statements regarding his abilities. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 601-02 (9th Cir. 1999). Here, however, substantial evidence did not support the ALJ's reason. In short, plaintiff testified (as the ALJ acknowledged and the Social Security Administration's employment records for plaintiff corroborate) that plaintiff had stopped working at the aquarium store in May 2008 – more than two years before Dr. Asimus began treating plaintiff, and well over a year before plaintiff's alleged onset date (*i.e.*, November 1, 2009). (AR 11, 17, 59, 231, 247, 490). Thus the record does not reflect inconsistency between plaintiff's abilities related to his pre-onset employment and Dr. Asimus' opinions that plaintiff had disabling psychological limitations after the alleged onset date.

Second, the ALJ also rejected Dr. Asimus' Opinions based on plaintiff's asserted ability to "complet[e] a university degree." (AR 18). This reason also is not supported by substantial evidence. For example, the record does not reasonably support an inference that plaintiff was in school for any material period

of time while Dr. Asimus was treating him. As noted above, Dr. Asimus treated plaintiff from September 2010 to March 2011. Plaintiff testified that, due to his condition, he needed to take a medical leave of absence for one semester in 2010, and needed to take off up to "three, maybe four" additional semesters between 2011 and 2013. (AR 47, 498-500). Even so, the record does not reasonably support the ALJ's finding that plaintiff's level of involvement in school was materially inconsistent with the mental limitations found by Dr. Asimus. Plaintiff testified that it took him over 10 years to get a bachelor's degree. (AR 33-34, 43-44, 47). Even while enrolled at school plaintiff at times did "very poorly in [] class," routinely missed class ("one or two days per week" on average), was forced to withdraw from classes multiple times over the years because he fell too far behind, and needed multiple special accommodations (*i.e.*, the ability to miss classes, multiple breaks and extra time granted for exams, private room for testing, extensions on assignments, cooperation from faculty), all due to plaintiff's psychological condition. (AR 38, 45-51, 498-500).

In addition, the ALJ rejected the only other medical opinions regarding plaintiff's mental abilities (*i.e.*, those of Nurse Practitioner Wendy Brandon [AR 18, 483-85] and Dr. Anna M. Franco, a State agency medical consultant [AR 19, 369-80]). As a result, there was no assessment in the record by a treating or examining doctor of the effects of plaintiff's psychological condition on plaintiff's residual functional capacity generally or plaintiff's specific ability to "respond appropriately to work pressures in a routine work setting." Thus, it appears that the ALJ's rejection of Dr. Asimus' Opinions, and in fact, the ALJ's assessment of plaintiff's mental residual functional capacity apart from such opinions – was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's treatment records from other medical providers – which is not substantial evidence that could support a nondisability determination. See Penny, 2 F.3d at 958 ("Without a personal medical evaluation it is almost impossible to assess the

residual functional capacity of any individual."); see also Tagger v. Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.") (citations and internal quotation marks omitted); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[ALJ] must not succumb to the temptation to play doctor and make . . . independent medical findings.") (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)) (quotation marks omitted); Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.") (citations omitted).

Finally, the Court cannot find the ALJ's error harmless.[3] As noted above, Dr. Asimus opined that plaintiff, among other things, had marked restriction in his ability "to respond appropriately to work pressures in a routine work setting." (AR 427). At both hearings, the vocational expert essentially testified that there would be no jobs that plaintiff (or a hypothetical individual with the same characteristics as plaintiff) could do, if plaintiff had "a marked limitation in ability to respond appropriately to work pressures in a usual work setting. . . ." (AR 69-70; 517). Therefore, the Court cannot conclude that the ALJ's decision would have been the same absent the ALJ's error.

### B. Substantial Evidence Does Not Otherwise Support the Second Decision

A remand is warranted because it appears that the record is inadequate to allow for proper evaluation of plaintiff's disability for any period after that addressed by Dr. Asimus' March 2011 Statement. See Mayes v. Massanari, 276

---

[3]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout, 454 F.3d at 1054-56 (discussing contours of application of harmless error standard in social security cases).

1  F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop the record further
2  triggered, in part, "when the record is inadequate to allow for proper evaluation of
3  the evidence"); see also Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)
4  (ALJ has affirmative duty "to fully and fairly develop the record and to assure that
5  the claimant's interests are considered") (citation omitted).
6      As discussed above, the ALJ questioned the probative value of Dr. Asimus'
7  March 2011 Statement to plaintiff's "current condition," and the record otherwise
8  lacks any opinion evidence credited by the ALJ which addresses the effects of
9  plaintiff's mental impairments on his ability to work.
10     Moreover, multiple inaccuracies in the ALJ's interpretation of the record
11 evidence calls into question the validity of the ALJ's decision for any alleged
12 period of disability.  See Reddick, 157 F.3d at 722-23 (ALJ may not develop
13 evidentiary basis for decision "by not fully accounting for the context of materials
14 or all parts of the testimony and reports"); Gallant v. Heckler, 753 F.2d 1450, 1456
15 (9th Cir. 1984) (error for ALJ to disregard or misinterpret competent evidence in
16 the record in order to support conclusion); see, e.g., Regennitter v. Commissioner,
17 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an
18 "inaccurate characterization of the evidence" cannot support an adverse credibility
19 determination).  For example, in assessing credibility, the ALJ suggested that
20 plaintiff had been dishonest essentially because in his Disability Report plaintiff
21 had not stated "disabling symptoms" as the reason he left an aquarium store where
22 he had worked from 2003-2008.  (AR 17) (citing Exhibit 1E at 3 [AR 266]).
23 Plaintiff clearly indicated in his Disability Report, however, that while he had
24 stopped working *at the aquarium store* because the "store closed [and] all
25 employees [were] laid off," plaintiff did not become unable to work *due to his*
26 *mental impairments* until well over a year later (*i.e.*, November 1, 2009, the
27 alleged onset date).  (AR 266).  The ALJ also suggested that plaintiff had been
28 dishonest because after leaving the aquarium store plaintiff had collected

unemployment benefits – which, unlike disability benefits, required plaintiff to represent that he was *able* to work. (AR 17; see AR 62, 501-02). Any seeming inconsistency, however, is dispelled by plaintiff's clear testimony at both hearings that he had stopped collecting unemployment benefits approximately four months *before* he applied for Social Security disability. (AR 62-63, 501-02).

The ALJ also suggested that plaintiff's subjective symptoms were "not as serious as [plaintiff] alleged," in part, because an October 2010 progress note reported that "[plaintiff] told Dr. Asimus that he felt 'a lot better' with Zoloft." (AR 16-17). The ALJ's description of the progress note, however, does not accurately convey the full substance or tone of its contents. When viewed in full, the October 2010 note more accurately reflects that while an increased dosage of Zoloft had initially helped reduce plaintiff's anxiety and depression, eight days later plaintiff's depression returned "worse than before Zoloft" and plaintiff still had "anxiety attacks" and wanted to "avoid classes." (AR 432). Similarly, the ALJ noted that on February 25, 2011, plaintiff told Dr. Asimus that he felt "less depressed" after taking Pristig (AR 17, 431), but the ALJ did not mention that two weeks later (*i.e.*, on March 13, 2011), plaintiff reported he was sleeping "too long" each day, feeling a "dark tunnel," and had been "very depressed" for two months. (AR 431).

In addition, in his evaluation of the medical evidence, the ALJ relied on several medical reports that predated the alleged onset date. (See AR 16-17) (citing Exhibit 1F at 3, 6, 10-11 [AR 333-36, 340-41] – April and June 2009 progress notes); Exhibit 2F at 6-9, 13 [AR 347-50, 354] – October 2008, January 2009, February 2009, and March 2009 progress notes). Absent any explanation from the ALJ as to the relevance of such pre-onset evidence to petitioner's case, such evidence erroneously suggested that petitioner's post-onset condition was less severe than plaintiff alleged. See generally Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical

13

opinions that predate the alleged onset of disability are of limited relevance.") (citation omitted); see, e.g., Keister v. Astrue, 2012 WL 933109, *3 (W.D. Wash. Feb. 13, 2012), report and recommendation adopted, 2012 WL 933106 (W.D. Wash. Mar. 20, 2012) (ALJ's citation to evidence from over a year before alleged onset date "[did] little to demonstrate that plaintiff was not disabled [after such date]"); see also Keister, 2012 WL 933109 at *3 ("In order for the ALJ to rely properly on evidence from prior to plaintiff's alleged onset date of disability in order to find that plaintiff was not disabled, the ALJ should have indicated his awareness of the fact that the treatment records on which he was relying pre-dated plaintiff's date of alleged onset of disability.").

## V. REMAND FOR PARTIAL PAYMENT OF BENEFITS AND FURTHER ADMINISTRATIVE PROCEEDINGS

When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (same) (citing id.); see also Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (under "ordinary remand rule" proper course is to remand to Social Security Administration for further administrative proceedings) (citations omitted). Even so, the choice whether to reverse and remand for further administrative proceedings, or to reverse and remand for immediate payment of benefits is within the discretion of the Court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Reddick, 157 F.3d at 728. Where, like here, an ALJ fails to provide a legally sufficient reason for rejecting significant, probative medical opinion evidence, pursuant to the Ninth Circuit's "credit-as-true rule," reversal and remand for immediate payment of benefits is generally required if (1) "the record has been fully developed and further administrative proceedings

would serve no useful purpose"; (2) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020 (citations omitted).  Even if all conditions of the "credit-as-true rule" are satisfied, however, remand for further proceedings (as opposed to the immediate payment of benefits) is appropriate "when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Id. at 1021 (citing Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003)).

      Here, the Court finds that plaintiff's case must be reversed and remanded in part for immediate payment of benefits for the period ending, at the earliest, March 13, 2011 – the date of Dr. Asimus Opinions which, together with testimony from the vocational expert, reflected that there were no jobs that plaintiff could do. See generally 42 U.S.C. § 405(g) (on appeal of final decision of Commissioner, District Court has the power "to enter . . . a judgment affirming, *modifying*, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing") (emphasis added).  Although defendant argues, in a conclusory fashion, that the Court should remand the case for further administrative proceedings (Defendant's Motion at 12-13), such argument does not persuade the Court that a remand to permit the ALJ another opportunity to address Dr. Asimus' Opinions would be fruitful or fair.  First, the ALJ has twice rejected Dr. Asimus' Opinions without providing legally sufficient reasons for doing so.  Second, defendant points to no outstanding issues that must be resolved before a determination of disability can be made in this case for the period of time such opinions address.  Third, two vocational experts unequivocally testified that a person who suffered limitations consistent with those expressed in Dr. Asimus' Opinions would be precluded from all work.  Therefore, it is clear that the ALJ would be required to find plaintiff disabled if the ALJ fully credited Dr. Asimus'

Opinions. Finally, it would not be fair to plaintiff to afford the Commissioner a third opportunity to address the precise issue that the Appeals Council raised in its July 9, 2013 remand order. See, e.g., Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (allowing Commissioner a second chance to decide the "central issue" in claimant's case "create[s] an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted); cf. Moisa, 367 F.3d at 887 (remanding for payment of immediate benefits noting that "[t]he Commissioner . . . should not have [a second] opportunity to show that [plaintiff] is not credible any more than [plaintiff], had he lost, should have an opportunity for remand and further proceedings to establish his credibility.") (citation omitted).

Conversely, remand for immediate payment of benefits under the "credit-as-true rule" would not be appropriate for any alleged period of disability thereafter. For the reasons discussed above, there is no evidence from which this Court could conclude that the ALJ would be required to find plaintiff disabled on remand for such period of time. See Garrison, 759 F.3d at 1022 (noting that determination of whether ALJ "would be required to find [] claimant disabled on remand," in part, requires analysis of the "strength of the improperly discredited evidence").

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is reversed and remanded (1) for immediate payment of benefits at least for the period through March 13, 2011 (or such later date the Commissioner determines is supported by the evidence); and (2) for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 31, 2015            /s/

                                     Honorable Jacqueline Chooljian
                                     UNITED STATES MAGISTRATE JUDGE