1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| STEVEN ROSS FONG, | Case No. CV 14-6351 JC |
| Plaintiff, | SUPERSEDING MEMORANDUM OPINION AND ORDER OF REMAND |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

17   **I.   SUMMARY**

18       On August 15, 2014, plaintiff Steven Ross Fong ("plaintiff") filed a

19   Complaint seeking review of the Commissioner of Social Security's denial of

20   plaintiff's applications for benefits.  The parties consented to proceed before the

21   undersigned United States Magistrate Judge, and filed cross motions for summary

22   judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"), which

23   the Court took under submission without oral argument.  See Fed. R. Civ. P. 78;

24   L.R. 7-15; August 19, 2014 Case Management Order ¶ 5.

25       Based on the record as a whole and the applicable law, and as explained

26   below, the decision of the Commissioner is REVERSED AND REMANDED for

27   further proceedings consistent with this Superseding Memorandum Opinion and

28   Order of Remand.

## II.     BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On February 1, 2010, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits.  (Administrative Record ("AR") 11). Plaintiff asserted that he became disabled on November 1, 2009 ("onset date"), due to bipolar depression, OCD, and major anxiety disorder.  (AR 264-66).  The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on August 22, 2011.  (AR 487-518).  On September 7, 2011, the ALJ determined that plaintiff was not disabled through the date of the decision ("First Decision"). (AR 88-96).

On July 9, 2013, the Appeals Council granted review, vacated the First Decision, and remanded the case essentially directing the ALJ, among other things, to give further consideration to the opinions provided by Dr. Daniel Asimus, one of plaintiff's treating physicians, and, in turn, to reassess plaintiff's residual functional capacity and obtain supplemental evidence from a vocational expert as needed.  (AR 102-03).

On March 19, 2014, the ALJ again examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert.  (AR 487-518).

On April 14, 2014, the ALJ determined that plaintiff was not disabled from the alleged onset date through the date of the decision ("Second Decision").  (AR 11-21).  Specifically, the ALJ found:  (1) plaintiff suffered from the severe impairment of bipolar disorder (AR 13); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 14); (3) plaintiff retained the residual functional capacity to perform a full range of

///

///

2

work at all exertional levels with additional nonexertional limitations[1] (AR 14); (4) plaintiff could not perform any past relevant work (AR 19); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically laundry worker, and kitchen helper (AR 20-21); and (6) plaintiff's allegations regarding his limitations were not entirely credible (AR 15).

The Appeals Council denied plaintiff's application for review.  (AR 1).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

///

///

---

[1]The ALJ determined that plaintiff:  (1) could only do work involving simple repetitive tasks; and (2) could not perform work involving public contact or more than occasional contact with coworkers.  (AR 14).

3

(2)     Is the claimant's alleged impairment sufficiently severe to limit
        the claimant's ability to work?  If not, the claimant is not
        disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of
        impairments, meet or equal an impairment listed in 20 C.F.R.
        Part 404, Subpart P, Appendix 1?  If so, the claimant is
        disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to
        perform claimant's past relevant work?  If so, the claimant is
        not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
        considered with the claimant's age, education, and work
        experience, allow the claimant to adjust to other work that
        exists in significant numbers in the national economy?  If so,
        the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

4

(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.   The ALJ Materially Erred in Evaluating the Medical Opinion Evidence

Plaintiff contends that the ALJ improperly rejected certain medical opinions provided by Dr. Asimus.  (Plaintiff's Motion at 2-14).  The Court agrees.  As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

#### 1.   Additional Pertinent Background

Dr. Asimus treated plaintiff from September 2010 to March 2011.  (AR 431-36).  On March 13, 2011, Dr. Asimus completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" ("March 2011 Statement").  (AR 426-48).  In the March 2011 Statement Dr. Asimus opined, in pertinent part, that plaintiff had marked restriction in his ability "to make judgments on simple work-related decisions" and marked restriction in his ability to "respond appropriately

///
///
///

5

1   to work pressures in a routine work setting" ("Dr. Asimus' Opinions").[2]  (AR 426-
2   27).
3         In the First Decision, the ALJ described in detail all of the limitations Dr.
4   Asimus identified in the March 2011 Statement, and then summarily concluded
5   that "[c]onsistent with the opinion of Dr. Asimus and the claimant's level of
6   functioning while he was in school, the undersigned finds the claimant should
7   have no difficulty performing simple repetitive tasks in a work setting with no
8   public contact and occasional contact with coworkers."  (AR 94).  The ALJ did not
9   explain the weight, if any, he attributed to the opinions expressed in the March
10  2011 Statement.  (AR 94).
11        On July 9, 2013, the Appeals Council granted review, vacated the First
12  Decision, and remanded the case directing the ALJ to address the following issue:

13        The hearing decision does not contain an adequate evaluation of the
14        treating source opinion at Exhibit 9F at pages 3-5 from Dr. Asimus.
15        The hearing decision at page 7 summarizes Dr. Asimus' opinion
16        regarding marked limitations in making judgments on simple work-
17        related decisions and responding appropriately to work pressures, but
18        does not indicate the weight accorded or explain why these
19        limitations were not adopted.

20  (AR 102).
21         On remand the ALJ again detailed in the Second Decision all of Dr.
22  Asimus' findings in the March 2011 Statement, including Dr. Asimus' Opinions
23  regarding the two categories of marked restrictions in plaintiff's mental

24  _____

25         [2]In the March 2011 Statement, Dr. Asimus also opined that plaintiff had (1) slight
    restrictions in his abilities to (a) understand and remember short, simple instructions,
26  (b) carry out short, simple instructions, (c) interact appropriately with the public, (d) interact
    appropriately with co-workers, and (e) respond appropriately to changes in a routine work
27  setting; and (2) moderate restrictions in his abilities to (a) understand, remember, and carry out
    detailed instructions, (b) and interact appropriately with supervisors.  (AR 426-27).
28

1  functioning – *i.e.*, abilities to make "simple work-related decisions" and to

2  "respond appropriately to work pressures." (AR 17-18). In evaluating the March

3  2011 Statement generally, the ALJ noted "concern" regarding the accuracy of the

4  findings therein as they applied to plaintiff's "current condition" since Dr.

5  Asimus' findings were made "more than three years ago." (AR 18). Nonetheless,

6  the ALJ still concluded that Dr. Asimus' findings were generally entitled to

7  "significant probative weight." (AR 17-18). The ALJ explained:

8      [T]he undersigned finds that Dr. Asimus' assessments of the

9      [plaintiff's] ability to interact appropriately with coworkers,

10     supervisors, and the public, respond appropriately to changes in a

11     routine work setting, and understand, remember, and carry out short,

12     simple instructions are deserving of significant probative weight

13     because they are supported by the objective medical evidence, which

14     shows a history of complaints of anxious, depressive, and

15     hypomaniac symptoms, but otherwise mostly normal cognitive,

16     expressive, intellectual, and receptive functioning, as well as

17     improvement in the [plaintiff's] condition with treatment. Dr. Asimus

18     maintained a lengthy treating relationship with the [plaintiff]. This

19     longitudinal prospective of the [plaintiff's] condition lends Dr.

20     Asimus' opinion [sic] additional probative weight.

21  (AR 18). However, the ALJ gave "little probative weight" to Dr. Asimus'

22  Opinions "regarding [plaintiff's] marked limitations" reasoning that such

23  limitations "[are] not supported by the record, which, as discussed above, reveals

24  that [plaintiff's] allegedly disabling symptoms did not prevent him from

25  performing work-related activities in an aquarium store and completing a

26  university degree." (AR 18).

27  ///

28  ///

7

1                    **2.    Pertinent Law**

2          In Social Security cases, courts give varying degrees of deference to

3    medical opinions depending on the type of physician who provided them, namely

4    "treating physicians," "examining physicians," and "nonexamining physicians."

5    Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation

6    marks omitted).  A treating physician's opinion is generally given the most weight,

7    and may be "controlling" if it is "well-supported by medically acceptable clinical

8    and laboratory diagnostic techniques and is not inconsistent with the other

9    substantial evidence in [the claimant's] case record[.]"  20 C.F.R.

10   §§ 404.1527(c)(2), 416.927(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir.

11   2007) (citations and quotation marks omitted).  An examining, but non-treating

12   physician's opinion is entitled to less weight than a treating physician's, but more

13   weight than a nonexamining physician's opinion.  See Garrison, 759 F.3d at 1012

14   (citation omitted).

15         A treating physician's opinion is not necessarily conclusive, however, as to

16   a claimant's medical condition or disability.  Magallanes v. Bowen, 881 F.2d 747,

17   751 (9th Cir. 1989) (citation omitted).  An ALJ may reject a treating physician's

18   uncontroverted opinion by providing "clear and convincing reasons supported by

19   substantial evidence in the record."  Reddick v. Chater, 157 F.3d 715, 725 (9th

20   Cir. 1998) (citation omitted).  Where a treating physician's opinion conflicts with

21   another doctor's opinion, an ALJ may reject the treating opinion "by providing

22   specific and legitimate reasons that are supported by substantial evidence."

23   Garrison, 759 F.3d at 1012 (citation and footnote omitted).

24         An ALJ may provide "substantial evidence" for rejecting a medical opinion

25   by "setting out a detailed and thorough summary of the facts and conflicting

26   clinical evidence, stating his [or her] interpretation thereof, and making findings."

27   Garrison, 759 F.3d at 1012 (quoting Reddick, 157 F.3d at 725) (quotation marks

28   omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (same) (citations

                                          8

omitted); <u>see also</u> <u>Magallanes</u>, 881 F.2d at 751, 755 (ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  An ALJ "must do more than offer [] conclusions."  <u>Embrey v. Bowen</u>, 849 F.2d 418, 421 (9th Cir. 1988); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating physician's opinion insufficient) (citation omitted).  "[The ALJ] must set forth his [or her] own interpretations and explain why they, rather than the [physician's], are correct."  <u>Embrey</u>, 849 F.2d at 421-22.

### 3.   Analysis

Here, substantial evidence did not support the two reasons the ALJ gave for rejecting Dr. Asimus' Opinions.  First, the ALJ stated that Dr. Asimus' Opinions regarding plaintiff's disabling psychological symptoms were inconsistent with plaintiff's testimony that he could do "work-related activities in an aquarium store."  (AR 18).  An ALJ may reject a medical opinion that is inconsistent with a claimant's statements regarding his abilities.  <u>See</u> <u>Morgan v. Commissioner of Social Security Administration</u>, 169 F.3d 595, 601-02 (9th Cir. 1999).  Here, however, substantial evidence did not support the ALJ's reason.  In short, plaintiff testified (as the ALJ acknowledged and the Social Security Administration's employment records for plaintiff corroborate) that plaintiff had stopped working at the aquarium store in May 2008 – more than two years before Dr. Asimus began treating plaintiff, and well over a year before plaintiff's alleged onset date (<u>i.e.</u>, November 1, 2009).  (AR 11, 17, 59, 231, 247, 490).  Thus the record does not reflect inconsistency between plaintiff's abilities related to his pre-onset employment and Dr. Asimus' opinions that plaintiff had disabling psychological limitations after the alleged onset date.

Second, the ALJ also rejected Dr. Asimus' Opinions based on plaintiff's asserted ability to "complet[e] a university degree."  (AR 18).  This reason also is not supported by substantial evidence.  For example, the record does not

9

1    reasonably support an inference that plaintiff was in school for any material period

2    of time while Dr. Asimus was treating him.  As noted above, Dr. Asimus treated

3    plaintiff from September 2010 to March 2011.  Plaintiff testified that, due to his

4    condition, he needed to take a medical leave of absence for one semester in 2010,

5    and needed to take off up to "three, maybe four" additional semesters between

6    2011 and 2013.  (AR 47, 498-500).  Even so, the record does not reasonably

7    support the ALJ's finding that plaintiff's level of involvement in school was

8    materially inconsistent with the mental limitations found by Dr. Asimus.  Plaintiff

9    testified that it took him over 10 years to get a bachelor's degree.  (AR 33-34, 43-

10   44, 47).  Even while enrolled at school plaintiff at times did "very poorly in []

11   class," routinely missed class ("one or two days per week" on average), was forced

12   to withdraw from classes multiple times over the years because he fell too far

13   behind, and needed multiple special accommodations (*i.e.*, the ability to miss

14   classes, multiple breaks and extra time granted for exams, private room for testing,

15   extensions on assignments, cooperation from faculty), all due to plaintiff's

16   psychological condition.  (AR 38, 45-51, 498-500).

17        In addition, the ALJ rejected the only other medical opinions regarding

18   plaintiff's mental abilities (*i.e.*, those of Nurse Practitioner Wendy Brandon [AR

19   18, 483-85] and Dr. Anna M. Franco, a State agency medical consultant [AR 19,

20   369-80]).  As a result, there was no assessment in the record by a treating or

21   examining doctor of the effects of plaintiff's psychological condition on plaintiff's

22   residual functional capacity generally or plaintiff's specific ability to "respond

23   appropriately to work pressures in a routine work setting."  Thus, it appears that

24   the ALJ's rejection of Dr. Asimus' Opinions, and in fact, the ALJ's assessment of

25   plaintiff's mental residual functional capacity apart from such opinions – was

26   erroneously based solely on the ALJ's own, lay interpretation of plaintiff's

27   treatment records from other medical providers – which is not substantial evidence

28   that could support a nondisability determination.  See Penny, 2 F.3d at 958

10

("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."); see also Tagger v. Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.") (citations and internal quotation marks omitted); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[ALJ] must not succumb to the temptation to play doctor and make . . . independent medical findings.") (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)) (quotation marks omitted); Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.") (citations omitted).

Finally, the Court cannot find the ALJ's error harmless.[3]  As noted above, Dr. Asimus opined that plaintiff, among other things, had marked restriction in his ability "to respond appropriately to work pressures in a routine work setting." (AR 427).  At both hearings, the vocational expert essentially testified that there would be no jobs that plaintiff (or a hypothetical individual with the same characteristics as plaintiff) could do, if plaintiff had "a marked limitation in ability to respond appropriately to work pressures in a usual work setting. . . ." (AR 69-70; 517).  Therefore, the Court cannot conclude that the ALJ's decision would have been the same absent the ALJ's error.

**B.   Substantial Evidence Does Not Otherwise Support the Second Decision**

A remand is also warranted because it appears that the record is inadequate to allow for proper evaluation of plaintiff's disability for any period after that

---

[3]The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout, 454 F.3d at 1054-56 (discussing contours of application of harmless error standard in social security cases).

1    addressed by Dr. Asimus' March 2011 Statement.  See Mayes v. Massanari, 276

2    F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop the record further

3    triggered, in part, "when the record is inadequate to allow for proper evaluation of

4    the evidence"); see also Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)

5    (ALJ has affirmative duty "to fully and fairly develop the record and to assure that

6    the claimant's interests are considered") (citation omitted).

7        As discussed above, the ALJ questioned the probative value of Dr. Asimus'

8    March 2011 Statement to plaintiff's "current condition," and the record otherwise

9    lacks any opinion evidence credited by the ALJ which addresses the effects of

10   plaintiff's mental impairments on his ability to work.

11       Moreover, multiple inaccuracies in the ALJ's interpretation of the record

12   evidence calls into question the validity of the ALJ's decision for any alleged

13   period of disability.  See Reddick, 157 F.3d at 722-23 (ALJ may not develop

14   evidentiary basis for decision "by not fully accounting for the context of materials

15   or all parts of the testimony and reports"); Gallant v. Heckler, 753 F.2d 1450, 1456

16   (9th Cir. 1984) (error for ALJ to disregard or misinterpret competent evidence in

17   the record in order to support conclusion); see, e.g., Regennitter v. Commissioner,

18   166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an

19   "inaccurate characterization of the evidence" cannot support an adverse credibility

20   determination).  For example, in assessing credibility, the ALJ suggested that

21   plaintiff had been dishonest essentially because in his Disability Report plaintiff

22   had not stated "disabling symptoms" as the reason he left an aquarium store where

23   he had worked from 2003-2008.  (AR 17) (citing Exhibit 1E at 3 [AR 266]).

24   Plaintiff clearly indicated in his Disability Report, however, that while he had

25   stopped working *at the aquarium store* because the "store closed [and] all

26   employees [were] laid off," plaintiff did not become unable to work *due to his*

27   *mental impairments* until well over a year later (*i.e.*, November 1, 2009, the

28   alleged onset date).  (AR 266).  The ALJ also suggested that plaintiff had been

12

1  dishonest because after leaving the aquarium store plaintiff had collected

2  unemployment benefits – which, unlike disability benefits, required plaintiff to

3  represent that he was *able* to work.  (AR 17; see AR 62, 501-02).  Any seeming

4  inconsistency, however, is dispelled by plaintiff's clear testimony at both hearings

5  that he had stopped collecting unemployment benefits approximately four months

6  *before* he applied for Social Security disability.  (AR 62-63, 501-02).

7       The ALJ also suggested that plaintiff's subjective symptoms were "not as

8  serious as [plaintiff] alleged," in part, because an October 2010 progress note

9  reported that "[plaintiff] told Dr. Asimus that he felt 'a lot better' with Zoloft."

10  (AR 16-17).  The ALJ's description of the progress note, however, does not

11  accurately convey the full substance or tone of its contents.  When viewed in full,

12  the October 2010 note more accurately reflects that while an increased dosage of

13  Zoloft had initially helped reduce plaintiff's anxiety and depression, eight days

14  later plaintiff's depression returned "worse than before Zoloft" and plaintiff still

15  had "anxiety attacks" and wanted to "avoid classes."  (AR 432).  Similarly, the

16  ALJ noted that on February 25, 2011, plaintiff told Dr. Asimus that he felt "less

17  depressed" after taking Pristig (AR 17, 431), but the ALJ did not mention that two

18  weeks later (*i.e.*, on March 13, 2011), plaintiff reported he was sleeping "too long"

19  each day, feeling a "dark tunnel," and had been "very depressed" for two months.

20  (AR 431).

21       In addition, in his evaluation of the medical evidence, the ALJ relied on

22  several medical reports that predated the alleged onset date.  (See AR 16-17)

23  (citing Exhibit 1F at 3, 6, 10-11 [AR 333-36, 340-41] – April and June 2009

24  progress notes); Exhibit 2F at 6-9, 13 [AR 347-50, 354] – October 2008, January

25  2009, February 2009, and March 2009 progress notes).  Absent any explanation

26  from the ALJ as to the relevance of such pre-onset evidence to petitioner's case,

27  such evidence erroneously suggested that petitioner's post-onset condition was

28  less severe than plaintiff alleged.  See generally Carmickle v. Commissioner,

13

1  Social Security Administration, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical
2  opinions that predate the alleged onset of disability are of limited relevance.")
3  (citation omitted); see, e.g., Keister v. Astrue, 2012 WL 933109, *3 (W.D. Wash.
4  Feb. 13, 2012), report and recommendation adopted, 2012 WL 933106 (W.D.
5  Wash. Mar. 20, 2012) (ALJ's citation to evidence from over a year before alleged
6  onset date "[did] little to demonstrate that plaintiff was not disabled [after such
7  date]"); see also Keister, 2012 WL 933109, at *3 ("In order for the ALJ to rely
8  properly on evidence from prior to plaintiff's alleged onset date of disability in
9  order to find that plaintiff was not disabled, the ALJ should have indicated his
10 awareness of the fact that the treatment records on which he was relying pre-dated
11 plaintiff's date of alleged onset of disability.").

12          **C.     Remand for Further Administrative Proceedings Is Warranted**
13          District courts generally have the power to affirm, modify, or reverse a
14 decision by the Social Security Commissioner "with or without remanding the
15 cause for a rehearing."  42 U.S.C. § 405(g).  When a court reverses an
16 administrative determination, however, "the proper course, except in rare
17 circumstances, is to remand to the agency for additional investigation or
18 explanation."  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16
19 (2002) (citations and quotations omitted); Moisa v. Barnhart, 367 F.3d 882, 886
20 (9th Cir. 2004) (same) (citing id.); see also Treichler v. Commissioner of Social
21 Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (under "ordinary
22 remand rule" proper course is to remand to Social Security Administration for
23 further administrative proceedings) (citations omitted).  Nonetheless, in certain
24 very limited cases, district courts have the discretion to reverse and remand a case
25 for immediate payment of benefits where doing so is needed in order to "achieve
26 fairness and efficiency."  See Garrison, 759 F.3d at 1019-20 (citations omitted).
27 For example, pursuant to the "credit-as-true rule" established by the United States
28 Court of Appeals for the Ninth Circuit ("Ninth Circuit"), where an ALJ fails to

provide any legally sufficient reason for rejecting significant, probative medical
opinion evidence, remand with instructions for immediate payment of benefits is
generally appropriate when (1) "the record has been fully developed and further
administrative proceedings would serve no useful purpose"; (2) "the ALJ has
failed to provide legally sufficient reasons for rejecting evidence, whether
claimant testimony or medical opinion"; and (3) "if the improperly discredited
evidence were credited as true, the ALJ would be required to find the claimant
disabled on remand." See Garrison, 759 F.3d at 1020 (noting credit-as-true rule
applies when ALJ improperly discredited both medical opinion evidence and
claimant testimony) (citing, in pertinent part, Hammock v. Bowen, 879 F.2d 498
(9th Cir. 1989)); see also Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009)
(noting Ninth Circuit "split in authority" over whether "credit-as-true rule" is
mandatory or discretionary) (citing cases).  Even if all conditions of the
credit-as-true rule are satisfied, however, remand for further proceedings (as
opposed to the immediate payment of benefits) is appropriate "when . . . an
evaluation of the record as a whole creates serious doubt that a claimant is, in fact,
disabled." Garrison, 759 F.3d at 1021 (citing Connett v. Barnhart, 340 F.3d 871,
876 (9th Cir. 2003)).

        The credit-as-true rule is primarily intended to encourage the speedy
resolution of Social Security claims without "endangering the integrity of the
disability determination process." Garrison, 759 F.3d at 1019 (citing Varney v.
Secretary of Health & Human Services, 859 F.2d 1396, 1398-99 (9th Cir. 1988)).
To that end, ALJs are required to articulate "in the original decision" all legitimate
reasons for discrediting competent claimant testimony or medical opinion
evidence. Id. (citation omitted).  Such a requirement "discourag[es] [ALJs] from
reaching a conclusion first, and then attempting to justify it by ignoring competent
evidence in the record that suggests an opposite result," "avoids unnecessary
duplication in the administrative hearings and reduces the administrative burden

15

caused by requiring multiple proceedings in the same case[,]" and, "[p]erhaps most important[ly,] . . . reduces the delay and uncertainty often found in [Social Security disability cases], and ensures that deserving claimants will receive benefits as soon as possible."[4] Id. (citation omitted).

The same considerations have been used to justify application of the credit-as-true rule in cases that were remanded for additional administrative proceedings only (i.e., without ordering immediate payment of benefits). See, e.g., Vasquez, 572 F.3d at 594 (remanding for further administrative proceedings with instructions that ALJ "accept [58 year old claimant's] symptom testimony as true in determining whether [claimant was] entitled to benefits" where ALJ had failed properly to evaluate claimant's credibility and it appeared that the ALJ had ignored competent evidence to reach an opposite, pre-determined conclusion); Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989) (accepting "as a matter of law" treating physician's opinions regarding claimant's inability to perform past work where ALJ gave "no specific reasons" for disregarding physician's opinion which conflicted with the ALJ's non-disability determination); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting in dicta, "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'") (citing Hammock, 879 F.2d at 502); Naggeye v. Colvin, 43 F. Supp. 3d 1136, 1139-40 (D. Or. 2014) (observing that credit-as-true rule applied regardless of whether case was remanded "for further proceedings or an award of benefits" since ALJ had failed to provide sufficient reasons for discrediting testimony of

---

[4]The Ninth Circuit has stressed: "[A]pplicants for disability benefits often suffer from painful and debilitating conditions, as well as severe economic hardship. Delaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage – financial, medical, and emotional." Garrison, 759 F.3d at 1019 (citing Varney, 859 F.2d at 1398-99).

1  treating psychiatrist, among others, despite "two rounds of administrative

2  proceedings over the course of eight years"); but see Vasquez, 572 F.3d at 600

3  (declining to address whether there was "any merit" to "expansive interpretation

4  of" Lester as applying credit-as-true rule as a matter of law in all cases where ALJ

5  fails to provide adequate reasons for rejecting testimony) (citation and internal

6  quotation marks omitted).

7       Here, since there appear to be outstanding issues that must be resolved

8  before a final determination can be made, a remand for further administrative

9  proceedings is warranted. Nonetheless, to ensure speedy resolution of plaintiff's

10 disability claims, and to avoid unnecessary duplication and additional waste of

11 administrative and judicial resources, on remand the Commissioner shall credit Dr.

12 Asimus' Opinions as true when determining whether plaintiff is entitled to

13 benefits.

14      Although defendant argues that she should be permitted to "correct" the

15 ALJ's error on remand (Defendant's Motion at 12-13), the Court is not persuaded

16 that granting the ALJ yet another opportunity to address Dr. Asimus' Opinions

17 would be fruitful or fair. The ALJ has twice rejected Dr. Asimus' Opinions

18 without providing legally sufficient reasons for doing so, and two vocational

19 experts have already unequivocally testified that a person who suffered limitations

20 consistent with those expressed in Dr. Asimus' Opinions would be precluded from

21 all work. It would not be fair to plaintiff to afford the Commissioner a third

22 opportunity to address the precise issue that the Appeals Council raised in its

23 July 9, 2013 remand order. Cf., e.g., Garrison, 759 F.3d at 1021 ("[Ninth Circuit]

24 precedent and the objectives of the credit-as-true rule foreclose the argument that a

25 remand for the purpose of allowing the ALJ to have a mulligan qualifies as a

26 remand for a "useful purpose" under the first part of credit-as-true analysis.")

27 (citations omitted); Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004)

28 (allowing Commissioner a second chance to decide the "central issue" in

1   claimant's case "create[s] an unfair 'heads we win; tails, let's play again' system
2   of disability benefits adjudication.") (citation omitted); Moisa, 367 F.3d at 887
3   (remanding for payment of immediate benefits noting that "[t]he Commissioner
4    . . . should not have [a second] opportunity to show that [plaintiff] is not credible
5   any more than [plaintiff], had he lost, should have an opportunity for remand and
6   further proceedings to establish his credibility.") (citation omitted).  To the extent
7   Dr. Asimus' Opinions were ambiguous, or the record was inadequate to allow for
8   proper evaluation of such opinions, the ALJ should have further developed the
9   record and addressed such issue in the First Decision.  See Garrison, 759 F.3d at
10  1020 (quoting Varney, 859 F.2d at 1399) ("[I]f grounds for [concluding that a
11  claimant is not disabled] exist, it is both reasonable and desirable to require the
12  ALJ to articulate them in the original decision."); Mayes, 276 F.3d at 459-60
13  (citation omitted).

14  **V.   CONCLUSION**

15      For the foregoing reasons, the decision of the Commissioner of Social
16  Security is reversed in part, and this matter is remanded for further administrative
17  action consistent with this Opinion.  On remand the Commissioner shall:  (1) re-
18  contact Dr. Asimus for clarification of the duration of the mental limitations
19  identified in Dr. Asimus' Opinions; (2) further develop the record medical
20  evidence of plaintiff's impairment(s) as needed to permit proper evaluation of
21  plaintiff's claims; (3) credit Dr. Asimus' Opinions as true in assessing whether
22  plaintiff is entitled to benefits; and (4) take whatever further action is needed to
23  complete the administrative record and issue a new decision.

24      IT IS SO ORDERED.

25      LET JUDGMENT BE ENTERED ACCORDINGLY.

26  DATED:  April 27, 2016

27  _____/s/_____

28  Honorable Jacqueline Chooljian
    UNITED STATES MAGISTRATE JUDGE